UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>THOMAS P. McDILL, Jr.,<br><br>　　　　　Defendant. | CR. 13-50139-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Thomas P. McDill, Jr., timely filed an appeal from a decision of United States Magistrate Judge Veronica L. Duffy.  (Docket 1).  See 18 U.S.C. §§ 3402 & 3742 (e) & (h).  Mr. McDill appeals from the judgment in a criminal case for petty offenses in which the magistrate judge found Mr. McDill guilty of two counts of threatening, resisting, intimidating, or interfering with a Forest Officer while engaged in, or on account of, the performance of duties for the National Forest System in violation of 36 CFR § 261.3(c).  (Docket 1-1).  The magistrate judge imposed fines of $600 and processing fees of $50 for a total of $650.  Id. at p. 2.  "Upon review of the record, the [district court] shall determine whether the sentence . . . was imposed in violation of law . . . ." 18 U.S.C. § 3742(e)(1).  For the reasons stated below, the decision of the magistrate judge is affirmed.

**DISCUSSION**

Mr. McDill was convicted of two violations of § 261.3(c) on June 11, 2013. That section provides:

> The following are prohibited: . . . [t]hreatening, intimidating, or intentionally interfering with any Forest officer[1] . . . while engaged in, or on account of, the performance of duties for the protection, improvement, or administration of the National Forest System or other duties assigned by the Forest Service.

36 CFR § 261.3(c).  The terms "threatening," "intimidating" and "intentionally interfering" are independent of each other and are separate offenses.  United States v. Willfong, 274 F.3d 1297, 1303 (9th Cir. 2001) (referencing United States v. Hoff, 22 F.3d 222 (9th Cir. 1994)); see also United States v. Scarborough, 2014 WL 2615824 *4 (M.D. Tenn. 2014) (the terms "are stated disjunctively so that proof of any one of the acts alone constitutes an offense.") (internal citation omitted).

"The defendant is not entitled to a trial de novo by a district judge.  The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."  Fed. R. Crim. P. 58(2)(D).  The court must "view the evidence in the light most favorable to the guilty verdict and accept all reasonable inferences that may be drawn from the evidence."  United States v. Rojas, 356 F.3d 876, 878 (8th Cir. 2004).  The court is limited to asking whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. (internal quotation marks and citation

---

[1] "Forest officer means an employee of the Forest Service."  36 CFR § 261.2.

2

omitted) (emphasis in original).   Viewed in the light most favorable to the verdict, the evidence presented at the court trial was as follows.

On May 20, 2013, Mr. McDill visited the Forest Service Offices in Custer, South Dakota.   (Docket 6 at p. 10).   Initially, Mr. McDill visited with Forest Service employee Todd Gohl.   Id.   When Mr. Gohl was unable to answer all of Mr. McDill's questions, it was suggested that he submit a Freedom of Information Act (FOIA) request.   Id. at p. 13.   Mr. McDill was not pleased with that answer.   Id.   Mr. McDill became more impatient, so Mr. Gohl referred him to Pat Hudson.   Id. at pp. 14-15.

Ms. Hudson is the main supervisor for the timber program on the Hell Canyon Ranger District.   Id. at p. 95.   Ms. Hudson talked with Mr. McDill for about 45 minutes that day.   Id. at p. 100.   She became uncomfortable because Mr. McDill's approach or demeanor was odd and their conversation was going in circles.   Id.   When their conversation ended she did not feel threatened but concluded that if she talked to Mr. McDill again, she would want another person present.   Id. at p. 101.

On June 11, 2013, Mr. McDill returned to the Forest Service Offices.   He met with Gregory McGranahan at about 10:45 a.m. or 11 a.m.   Id. at pp. 74-75.   Mr. McGranahan's conversation with Mr. McDill started at the front desk of the supervisor's office.   Id. at p. 74.   Because Mr. McDill was becoming adversarial and a bit irrational, Mr. McGranahan moved the meeting into his personal office.   Id. at p. 76.   As the Forest Service permit process was being explained, Mr.

McDill became more adversarial indicating he wanted nothing to do with permits because they were a "bunch of hooey." Id. at p. 77. Mr. McDill declared he did not like the Forest Service rules and he was going to do whatever he wanted. Id. On the suggestion that conduct might result in a citation, Mr. McDill said "that's good, just arrest me, it's just fun getting arrested." Id. at p. 79. Arrangements were made for Mr. McDill to meet Ms. Hudson at 1:30 p.m. that afternoon. Id.

Mr. McDill went instead to Ms. Hudson's building at about 11:30 a.m., once again meeting with Mr. Gohl. Id. at pp. 18-19. Mr. Gohl described Mr. McDill as agitated, impatient, appearing to be in a hurry and not getting the right answers. Id. at p. 19. When the suggestion was made that Mr. McDill should return at 1 p.m. so someone could help him, Mr. McDill was not happy. Id. at p. 24. He insisted on knowing why no one else was in the building at that moment to help him. Id. Mr. Gohl indicated the other employees were at an internal district safety meeting over at the Custer High School. Id. at pp. 25 & 27. Mr. McDill said he would return at 1 p.m. Id. at p. 27.

As the Forest Service meeting at the Custer High School was breaking up at about noon, Ms. Hudson observed Mr. McDill in the sitting area outside the auditorium. Id. at p. 102. He immediately got up, cut through the crowd and approached her. Id. Mr. McDill wanted more information about cutting Forest Service trees which were bug infested. Id. Ms. Hudson indicated she would be back in her office around 1:30 or 2 p.m. that afternoon if he wanted to visit. Id. In Ms. Hudson's words, Mr. McDill became "very forceful," saying "no I want to

4

talk to you now, I don't want to wait." Id. at pp. 102-03.   His tone was "direct," he would not take no for an answer and he insisted on talking to her right then. Id. at p. 103.   Ms. Hudson described him as being aggressive, intimidating, and moving into her personal space where she felt uncomfortable.   Id. at p. 105. She described Mr. McDill as "kind of pushing forward," moving in towards her and into her personal space.   Id.   Mr. McDill was raising his voice and insisting he wanted trees cut and removed.   Id. at p. 106.   He stated that if Ms. Hudson did not allow him to remove the trees, he would do it anyway and asked what she would do about it.   Id.

Ms. Hudson was getting upset and angry and raised her voice.   Id. at pp. 106-07.   Ms. Hudson felt threatened, intimidated and frightened by Mr. McDill. Id. at pp. 107, 109 & 110.   Mr. McDill is 6'3" and weighs 240 pounds.   Id. at pp. 207-08.   He was taller than Ms. Hudson.   Id. at p. 105.   Even though Mr. McDill was within a foot and a half from her body when he was speaking, it was more his demeanor which caused her concern.   Id. at p. 108.   Finally, Ms. Hudson insisted the discussion was over, she was going to leave and Mr. McDill also needed to leave.   Id. at p. 106.   At that moment, Acting District Ranger Kelly Honor started to approach them and Mr. McDill left.   Id. at p. 110.

Ms. Honor heard raised voices from some distance away and could see Mr. McDill speaking to Ms. Hudson.   Id. at p. 48.   After Mr. McDill left, Ms. Honor observed Ms. Hudson was physically shaking.   Id. at p. 50.   In the 15-20 years they had known each other, Ms. Honor never heard Ms. Hudson raise her voice

5

in that manner.  Id. at p. 63.  Ms. Honor insisted law enforcement be contacted. Id. at p. 50.  Ms. Hudson asked for help looking out the windows to insure that Mr. McDill left the area before she went to her car.  Id. at p. 51.

At about 12:05 p.m. Ms. Hudson notified Forest Service Law Enforcement Officer Eric Nelson of her encounter with Mr. McDill.  Id. at p. 128.  She was very upset and concerned for her safety.  Id. at p. 129.

Based on Ms. Hudson's report, Officer Nelson and Jeff Somers, a second law enforcement officer, met Mr. McDill at about 1:30 p.m. in the Forest Service parking lot.  Id.   When Officer Nelson asked why Forest Service employees were upset with Mr. McDill and did not want to talk to him, Mr. McDill did not want to talk about that subject but was focused on his own business issues.  Id. at p. 130.

Officer Nelson issued a citation pursuant to 36 CFR 261.3(c) to Mr. McDill for his encounter with Ms. Hudson.  Id. at pp. 133 & 148.  Mr. Nelson explained to Mr. McDill that because of his conduct, there should be no further personal contact with Forest Service employees, but rather he should deal with his FOIA requests by mail.  Id.

At around 5 p.m. on the afternoon of June 11, 2013, Mr. McDill went to another Forest Service office.  Id. at p. 159.  There he was met by Gwen Lipp, the District Fire Management Officer.  Id. at pp. 154-55.  Ms. Lipp described Mr. McDill was between 12 to 18" taller[2] and weighed over 100 pounds more

---

[2]Ms. Lipp is 5'2" tall.  (Docked 6 at p. 162).

6

than she did.  Id. at p. 161.  Because of the anger and frustration in Mr. McDill's voice, Ms. Lipp asked a male Forest Service employee to remain so she would not be alone with Mr. McDill.  Id.

Although Ms. Lipp described herself as an individual who is not easily intimidated, she became very concerned because Mr. McDill's physical conduct was very intimidating.  Id. at p. 162.  Mr. McDill said he had already been arrested that day for what law enforcement described as harassing Forest Service employees.  Id. at p. 162.  Mr. McDill repeated several times he was sick of getting the runaround.  Id. at p. 163.  Ms. Lipp was uncomfortable because it was clear Mr. McDill was not going to leave.  Id. at p. 165.  Mr. McDill was glaring at Ms. Lipp, there was anger in his voice and he was very forward in his mannerism.  Id. at pp. 174-75.  Ms. Lipp spent about 40 minutes diffusing the situation and convincing Mr. McDill to leave the premises.  Id. at p. 175.  She found Mr. McDill the most difficult person she had ever encountered.  Id.  When Mr. McDill left, Ms. Lipp asked the other employee to lock the door and she called Officer Nelson.  Id. at p. 168.  Officer Nelson issued a second citation pursuant to 36 CFR § 261.3(c) for Mr. McDill's encounter with Ms. Lipp on June 11, 2013.  Id. p. 150.

Mr. McDill acknowledges the testimony of these witnesses was "pretty much true and correct."  Id. at p. 197.  His disagreement with Ms. Hudson's testimony was she "spoke not only loudly but much more loudly that [he] did" and he never interfered with any of her work as a timber officer.  Id. at p. 198.

7

Mr. McDill argues there is no evidence to support a finding that he threatened a Forest Service employee.  (Docket 12 at p. 6).

It was for the magistrate judge to determine whether Mr. McDill made the Forest Service employees "timid or fearful and thus 'intimated' [them] as the term is commonly understood."  Hoff, 22 F.3d at 223 (referencing *Webster's Third International Dictionary* 1184 (1986)).  "[A] reasonable person standard . . . applie[s] to hostile conduct toward a [Forest Service employee] under 36 C.F.R. § 261.3 . . . ."  Id.  "Intimidation is conduct reasonably calculated to put another in fear . . . . [T]he acts of the defendant must constitute an intimidation to an ordinary, reasonable person. . . . Whether the defendant's actions did induce fear in an individual victim is not conclusive, but is probative of whether his acts were objectively intimidating."  United States v. Caldwell, 292 F.3d 595, 596 (8th Cir. 2002) (quoting United States v. Smith, 973 F.2d 603, 604 (8th Cir. 1992) (internal quotation marks omitted).  "Under this test the subjective courageousness or timidity of the victim is irrelevant; the acts of the defendant must constitute an intimidation to an ordinary, reasonable person."  Smith, 973 F.2d at 604 (internal quotation marks omitted).  "Intimidation, by definition, generates fear or employs various forms of coercion short of physical force or injury."  Dickens v. United States, 19 A.3d 321, 324 (D.C. 2011).  "A modern dictionary definition of 'intimidate' is: (1) to make timid; fill with fear. (2) to coerce, inhibit, or discourage by or as if by threats."  Id. at p. 324 n.17 (internal quotation marks omitted).  "To 'interfere' is to 'oppose, intervene, hinder, or

8

prevent.'" Willfong, 274 F.3d at 1301 (quoting *Webster's New World Dictionary* 704 (3d College ed. 1998)). "[M]ere remonstrances or even criticism of an officer are not usually held to be the equivalent of unlawful interference." Id. at 1302 (quoting United States v. Little, 339 U.S.1, 6 (1950)).

The magistrate judge believed the testimony of Ms. Hudson, Ms. Lipp and the other Forest Service witnesses. The magistrate judge found Mr. McDill was angry and confrontational when he encountered Ms. Hudson at the Custer High School. (Docket 6 at p. 210). She found Mr. McDill "got into [Ms. Hudson's] personal space, . . . raised [his] voice, . . . [and] threw down a threat." Id. The magistrate judge compared Mr. McDill's conduct to that of a bully on a playground "threatening and intimidating, especially when you're saying it with a raised voice and you're leaning into someone physical space." Id. Concerning his encounter with Ms. Lipp, the magistrate judge found that despite the earlier ticket and warning to have no contact with any Forest Service employees, Mr. McDill's "angry demeanor, the insistence [he was going to get answers], [and] . . . leaning into [Ms. Lipp's] personal space" constituted the offense charged. Id. at p. 211.

It is not the function of the court to reweigh the evidence or reassess witness credibility. United States v. Spears, 454 F.3d 830, 832 (8th Cir. 2006). Based on the evidence presented during the court trial, the court finds a reasonable person would consider Mr. McDill's conduct intimidating and threatening in violation of 36 CRF § 261.3(c). Caldwell, 292 F.3d at 596; Smith,

9

973 F.2d at 604.  Mr. McDill's conduct went beyond frustration and criticism of the Forest Service Personnel into the realm of criminal conduct expressly prohibited by § 261.3(c).  The court finds the essential elements of the offenses charged were proven beyond a reasonable doubt.  Rojas, 356 F.3d at 878.  The court finds Mr. McDill's convictions and the fines assessed were not imposed in violation of the law.  18 U.S.C. § 3742(e)(1).

## ORDER

Based on the analysis above, it is

ORDERED that the defendant's appeal (Docket 1) is denied.

IT IS FURTHER ORDERED that the judgment entered by Magistrate Judge Veronica L. Duffy (Docket 1-1) is affirmed.

Dated June 10, 2015.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE